Hearing, hearing, hearing. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and its honorable court. Good morning. This is Judge Wilson in Tampa. Judge Newsom is in Birmingham, and Judge Anderson is in Macon. And we have four appeals that are scheduled for oral argument this morning. I'd like to thank counsel for making yourselves available to conduct these arguments by telephone conferencing. And I would advise counsel that we have read the briefs in these appeals. We've examined the relevant parts of the record. If that will assist you in narrowing the focus of your arguments to the precise issues that are presented on appeal. Now, Ms. Geddes, Valerie Geddes, the courtroom deputy, is the timekeeper. And she will let you know when your time has expired. And she will also provide you with a two-minute warning in advance. So we are ready to proceed now with our arguments. And we will begin with the first argument. This is Emory University v. Neurocar, Incorporated. Robert Markovich is here for the appellant Emory. Michael Coleman Gretchen is here for appellee Neurocar. And Mr. Markovich, you may proceed. Good morning, your honors. May it please the court. My name is Robert Markovich. I'm with the Atlanta office of the Lewis-Brisbois law firm. And I represent the appellant in this case, Emory University, Inc. The court is familiar. There's a complex history in this case with lots of facts going around. Of course, there was an underlined medical malpractice proceeding in the DeKalb County, Georgia, State Court. There was a judgment against Emory. Sorry, there was a verdict against Emory. Unfortunately, there was a judgment against Emory University, Inc. There were claims for indemnification there. There were post-judgment motions. And then ultimately, Emory filed this federal court action for indemnification. And when all of that is disentangled, at least as to Neurocar's motion for summary judgment, Emory University also had a cross motion for summary judgment. But the court granted Neurocar's motion for summary judgment. When all of that is distilled, it really comes down to one basic issue. And that's whether there are any disputes of fact as to Neurocar's defense to its indemnification obligation. And the district court assumed that Neurocar, but for this defense, did have, sorry, that Emory University did have a right to indemnification from Neurocar. So stated more specifically, this issue is, is there a dispute of fact as to whether Emory University, after essentially substituting in the underlying action for Wesley Woods, failed to assert a defense that would have defeated that underlying action when it did not maintain the so-called enterprise liability defense? And the answer to that question is? This is Judge Wilson. There are two Georgia cases, emergency professionals of Atlanta versus Watson and U.S. Lons versus Cutting Edge, that say that when a party fails to bring a complete defense, even by mistake, the indemnification bar applies. Couldn't Emory have asserted an enterprise liability defense? Wouldn't that have constituted a complete defense in the original proceeding, which would have defeated the action? The answer to that, Your Honor, is no. And there's really two reasons for that. And these are the two reasons why there are issues of fact on that very point. Yes, Emory could have asserted a defense that it's not liable, Wesley Woods is. But we need to consider the context. And Emory University entered the case late. It actually technically substituted for Emory Healthcare, Inc. The morning of trial, counsel for Emory, I think, mistakenly thought that Emory University had substituted in for Wesley Woods. Plaintiff's counsel agreed, but Wesley Woods was never dismissed from the case. And, in fact, NeuroCare has that in its own brief. So if Emory University had come into the case and then turned around and asserted this enterprise liability defense and said, no, not us, Wesley Woods, then the jury and the federal court action, when Emory filed, is free to infer that the trial court would not have committed the substitution. It would have reversed the substitution. And certainly plaintiff would have objected. And the second issue of fact on that very point, Your Honor, is that the jury in this case, the federal case, would have been free to infer that the plaintiff in the underlying action, if Emory had entered the underlying action and asserted the enterprise liability defense, then the plaintiff simply would have geared its case towards Wesley Woods, not Emory University, and assured that the judgment was entered against Wesley Woods to get around that defense. So in that sense, it's not a complete defense at all because the net effect of its assertion of an enterprise liability defense would have been zero. It would not have defeated the action. That is, it would not have extinguished the liability in the underlying action as to which Emory University is seeking indemnification if it had asserted that defense. So this is Judge Newsom, just so I understand. You're drawing a distinction between a defense that would have defeated the entire action from the indemnitor's perspective and a defense that would have defeated liability as to Emory. And your point is you could have raised this enterprise liability defense. It would have shielded Emory, but it wouldn't have shielded Wesley Woods. NeuroCare still owed an indemnification obligation to Wesley Woods, and so the net effect as to NeuroCare is zero. That's exactly right, Your Honor. The net effect for Emory, all good news for Emory, because Emory University would be out, but the indemnitor, for whom presumably the indemnification bar rule exists, would be in the same position. That's exactly right. That's precisely what our argument is, Your Honor. This is Judge Anderson asking the question. I gather that you are not urging us to reverse and render, but rather you're urging us to reverse on the basis of the theory you just spelled out. Suppose we agree with you on that theory. I assume it's not so absolutely clear that the jury would have found Wesley Woods liable and therefore NeuroCare would owe them the indemnity and no harm at all to NeuroCare. I assume that's not so absolutely clear that you're seeking us to, in effect, grant your summary judgment. Rather, you're simply saying there are issues of fact in that regard. We should reverse the district court's grant of summary judgment in favor of NeuroCare. Is that your position? Well, not quite, Your Honor. We are, of course, principally asking the court to reverse the grant of summary judgment as to NeuroCare's summary judgment. But we also did move for summary judgment against NeuroCare. So it was cross motions. And on that point, there's really two issues. And I can go into them. That wouldn't be a direct answer to your question. But the answer to the question is, yes, principally we're here to get the summary judgment reversed. But we do have a cross motion for summary judgment, which the district court did not address. It just addressed the indemnification bar defense. So what are the two issues on your motion for summary judgment? The affiliate issue and then this bar issue? Well, you've got the indemnification bar. And the indemnification bar applies to NeuroCare's motion. That's really their defense to our indemnification claim. Good morning, counsel. Thank you. And then as to our motion against NeuroCare, yes, there's the affiliate issue. And then there's another issue, which is that NeuroCare has claimed that it's impossible to tell from the face of the verdict whether Emory University was directly liable, in which case it could not seek indemnification, or instead was vicariously liable, in which case it could. And I can go into those issues probably not with the time I have remaining. But we do brief them thoroughly in our brief. So it's cross motions. Let me ask you this. Is it so clear that the jury would have held Wesley Woods liable had Emory asserted this defense? Is that so clear that there's no facts to be developed with respect to that? Or is that a little unclear and should be developed factually, possibly at trial below? I see your point, Your Honor. I do think it's quite clear, but I guess there could be some room for a jury in the district court to say, well, I know they found Emory University liable, but I don't think it would have been Wesley Woods. In fact, plaintiff's position, NeuroCare's position, is that it was Wesley Woods that had, quote, complete control, or I'm not exactly sure what the words were, but had the duty of supervision with respect to NeuroCare. So, I mean, there might be some room. I would say logically not a lot, but I get your point, Your Honor. I see. Counsel, your time has expired. Thank you. Thank you, Your Honor. Thank you, Mr. Markovich. We'll hear from Mr. Gretchen. Thank you, Judge Wilson. Good morning, and may it please the court. My name is Michael Gretchen, and together with Hank Fellows, John Peters, and Jeff Bazinet, we represent NeuroCare, Inc. Under Georgia law, the only fact that matters in this appeal is that Emory University failed to assert a complete defense to liability in the underlying lawsuit. Can I ask you a question? Emory University. This is Judge Newsom. Just a quick question out of the gate, the same question I asked your adversary, but I'm having a hard time sort of reconciling what everybody means by complete defense. Do you mean a complete defense as to Emory or a complete defense that would have extinguished your indemnification liability? Because I think those two things are different given the continuing presence of Wesley Woods. And as I read GAF, it says defense to the action, which I take to mean on the part of the indemnitor. I mean, that's for whose action the indemnification bar exists. Your Honor, that's a good question. And I think what I would point to is the city of Albany versus Pippin case, the Georgia Court of Appeals decision, where it defined what is a complete defense in these circumstances. And in adding color to the GAF case, the Pippin decision said that a complete defense is, quote, any defense showing the lack of a legal compulsion to pay. And that's on the part of the indemnity. So the Georgia Court of Appeals has developed the GAF line to say that what we're really focused on is the liability to the indemnity, and Emory University in this case. If you look at those two… I know you know a lot more about this than I do, but explain to me why that makes sense. I mean, I would have thought that the indemnification bar exists to protect the indemnitor. It really doesn't focus on the indemnity, but the indemnitor. It's the indemnitor's liability that either is extinguished or not. So why would we be focusing on continuing liability of the indemnity instead of the continuing obligation of the indemnitor? I think, Judge Newsom, that's because the way that the Georgia Courts of Appeals have developed this case law is really out of the voluntary payment doctrine. To categorize NeuroCare's position in this case as an equitable defense is simply not an accurate summary of the voluntary payment doctrine at all. Rather, this is concerned with whether the party seeking indemnification can prove what the Georgia Supreme Court called the quintessential element of its claim. And the quintessential element of a claim for indemnification under Georgia law is the legal compulsion to pay on the part of the one seeking indemnification. So that's why it really… the case law that Watson and Cutting Edge, the cases that Judge Wilson referred to earlier, they pick up on that. It's focused on whether the party seeking indemnification was really legally compelled to make the payment for which it seeks indemnification. And in Watson, the court said it doesn't really matter whether that payment was made after a judgment. The voluntariness of a payment is determined by whether the party seeking indemnification had a defense which would have defeated the claim for which it seeks indemnity. And that's exactly what we have here. I think even my learned friend on the other side acknowledges that Emory University could have successfully pressed this enterprise liability defense because it was merely a grandparent corporation. I don't think it contests that. It even concedes it in its reply brief at page 5. It concedes that this enterprise liability defense would have insulated Emory University from liability in the underlying lawsuit. And I guess NeuroCare's point on appeal is that is the only fact that the Georgia courts of appeals, including the Georgia Supreme Court, have relied on. If you look at the Watson case… This is Judge Anderson talking. The truth of the matter is that the Georgia courts have not addressed this issue. Is that not true? I have not found and you have not cited any case in which the indemnitor was not harmed at all. Its right of indemnification was not affected at all by Emory's actions in this case. And Georgia simply has not addressed a situation like that. Is that not true? Yes, in the immediate, Your Honor, Judge Anderson. I think it's correct that no one, as far as I can tell in the Georgia case law, has made this kind of secondary argument that Emory University is making here where it asks the court to kind of speculate in the abstract. Well, what would have happened had they asserted this defense? Would it have really changed your indemnification obligations? And I think that's because it's entirely speculatory. We don't know how a jury would have ruled in a hypothetical case. But rather we know that Emory University, again, the only plaintiff in this case, the only party to have suffered a judgment that it seeks to shift onto neurocare. We know that Emory University could have raised this defense and they concede that they failed to raise it. Your answer to Judge Anderson's question suggests that maybe we should consider certifying this issue to the Georgia Supreme Court because it seems like we do have an unresolved issue of state law without sufficient controlling precedent from the Georgia Supreme Court. Would you agree with that? With respect, Your Honor, I don't believe so. I think that the Watson case, the cutting-edge landscaping case, and then especially the color that was lost by the Progressive Electric Services case, which was even a more subsequent decision by the Georgia Court of Appeals in 2014, I think that that properly frames the issue that this court needs to consider. How does Georgia law view this voluntary payment doctrine with respect to indemnification claims? And I think it's clear from those cases that it doesn't view it as an equitable defense that depends on the circumstances of what would have happened from the indemnitor's perspective. I think those cases really lay out a thread that says we're going to focus on whether the indemnity could have avoided liability. And that's exactly what happened in Watson and cutting-edge. And in Progressive Electric Services, it didn't involve an indemnification claim like we have here, but the Georgia Court of Appeals says that the voluntary payment doctrine is merely a corollary to the quintessential element of an indemnity claim, which requires proof of a legal compulsion to pay. And so what you have to do is I think you'd have to look at, okay, well, what are the essential elements that Emory University needs to prove here? And one of those is a legal compulsion to pay. Emory University, because they failed to assert this complete defense, didn't have a legal compulsion to pay. Therefore, as a matter of law, they cannot meet the essential elements of an indemnification claim. And that's really the simple matter of how we view this case, and we urge this court to view it as well. This is Judge Wilson. Do we know from Georgia law whether this indemnification bar applies when a party fails to bring a complete defense as a part of a legitimate litigation strategy? I think, Your Honor, I don't know if the courts have ever considered a legitimate defense strategy in conjunction with a failure to assert a complete defense. I know that my friend on the other side… Emory does say in its brief, it does argue in its brief, that the bar doesn't apply because its decision with regard to the underlying suit was a legitimate defense strategy, and that would make it exempt from the indemnification bar. But we don't really have any Georgia law that would provide us any guidance in answering that question, do we? No, Your Honor. I think what my friend on the other side is attempting to do with the Connors case under the Georgia Court of Appeals is to say that because there was some language in that opinion where the court referred to a legitimate defense strategy of… that Emory University's decision to enter the case on the eve of trial is somehow akin to that stipulation of agency in Connors. But I think that this is sort of a kind of a Frankenstein rule that my friend kind of creates out of Connors. I think he reads way too much into Connors. The Connors decision itself states that the indemnity in that case was not guilty of failing to raise a complete defense to liability. It didn't say in that case that there was evidence of a complete defense. In fact, I think the only presumed complete defense that it analyzed was a statute of limitations defense that the Court of Appeals recognized would not have shielded the indemnity in that case from liability anyway. So there was no evidence in Connors that the indemnity in that case even had a complete defense. Unlike here, where I think it's critical, Emory has conceded that fact. So Emory is trying to get around that concession, which I think it has to take based off of the record here, and try to argue that really, you know, in the hypothetical case, the jury just would have pointed the finger at Wesley Woods. But I don't think that the court can take the hypothetical where the Georgia Court of Appeals cases just don't go that far. They stop at the moment a indemnity fails to assert a complete defense. So that's why we would distinguish Connors, Your Honor, which I know is a case that Emory University relies on heavily. And I think, Your Honors, this argument that there was a net zero effect to neuro care has no support in Georgia law. There's an attempt here to suggest that this principle really means we should ignore the fact that they cannot establish the quintessential element of their claim. But I don't think that any Georgia case law would support that argument. And on the other hand, we have the cases from GAF and Watson and Cutting Edge and Progressive Electric that do support our argument. It's important to note, too… Just so I'm clear, this is Judge Newsom. I just want to make sure I've got my Georgia law straight. But GAF does say, defeat the action, right? I mean, I guess that… Yes, I mean, it uses that word action, but I think what the GAF case eventually said, too… And let me see if I can find the exact language for you. It quoted the language from the Louisiana Supreme Court where it said, no indemnification or contribution can be recovered by the party cast against the third party if the party cast had a defense available which would have defeated the action. So I think it's referring to the action as to that party, not the action in the abstract that would include an indemnitor in this case. I think the focus on these cases, and certainly in Watson and in Cutting Edge, has been on… Let's focus on the indemnity here. Georgia law is, you know, in terms of contractual indemnification claims, they strictly construe them against an indemnity. These claims are not well-received, and there's going to be strict evidentiary requirements in order to meet them. So let's look at the indemnity who's claiming a right to indemnification, and if for some reason that indemnity could have avoided liability entirely on its own, then we're not going to provide for indemnification in those circumstances, and that's what I think the rule has developed. So the indemnification bar operates essentially as a penalty against an indemnity who could have raised a defense as for itself instead of as a protection of the indemnitor? I think it operates to make sure that folks who have, in the background, this idea that they have an indemnification right, but they're not accepting liability when they don't need to. It's like a punitive measure. It's not a protective measure for the indemnitor, you're saying. It's a punitive measure of indemnity. If you want to call it punitive, I would just call it an essential element of what the indemnity needs to prove. Again, in this case law, it's about whether the indemnity can establish an essential element of its claim, and that is the legal compulsion to pay. And that's where I think the court needs to at least focus on what Georgia law considers this type of claim to be. You can think of it as any number of causes of action there are elements that you have to establish. Thank you, Ms. Geddes. There are elements that any plaintiff in any case has to establish, and an indemnity in this type of claim has to establish a legal compulsion to pay. And under the case law that we've cited, I think it's fairly strong in the thread running through them, is if that indemnity had a legal defense available to it and failed to assert it, then it cannot establish as a matter of law this necessary element that it had a legal compulsion to pay. That's what the court held in Watson. That's what the court held in Cutting Edge. When they failed to assert the statute of limitations defense in Watson, and when they failed to assert the lack of duty defense in the Cutting Edge case. So, your honors, I see that my time is getting to an end. So, in closing, Emory University has never really explained why it jumped into the case when it was insulated from liability. But ultimately, those reasons do not matter. Georgia law looks only to whether the party seeking indemnification can show that it was legally obligated to make the payment for which it seeks indemnification. As a matter of law, that party cannot make that showing if it had a complete defense to liability and it failed to assert it. That's exactly what we have here, and so we ask this court to affirm Judge Steve Jones' order and judgment. Thank you. All right. Thank you, Mr. Gretchen. We'll hear again from Mr. Markovich. Yes, your honor. I have a few, just a few quick points I'd like to make. One is, this goes to really Judge Anderson's question during my opening argument about the existence of an issue of fact. And I believe Mr. Gretchen said something to the effect of, well, if Emory had entered and then asserted the defense, we don't know how the jury would have ruled if the plaintiff had gone after Wesley Woods. And that is the precise type of issue of fact that Judge Anderson identified, which would certainly not argue in favor of affirmance. As to the point that Judge Newsom made about defeating the action, the Watson case actually pretty much says it. It says, it's 288 Georgia F at 476, quote, the trial court recognized there was no dispute that Watson was an independent contractor and such would be a complete defense to EPA being held liable for Watson's conduct. And it also says at 477, 478, it talks about would have been absolved of any liability. So it really is talking about defeating the action. And of course it is to protect the indemnitor, not to penalize the indemnity. And finally, unless the court's got other questions, the Conners case does talk about a defense strategy. And there the indemnity stipulated to a parent agency of a contract nurse and agreed that it would be liable if she was found liable. And of course the court was not as specific as it probably could have been or should have been. But what it did say is that the hospital, it was a hospital with a contract nurse, focused its defense on minimizing the proportion of fault attributed to its own employee. And that identified no legal precedent that such a defense strategy constitutes a waiver of a complete defense. So defense strategy is considered in this calculus. And with that, unless the court has further questions, I will rest on a brief. Thank you Mr. Markovich and Mr. Gretchen.